Ranney, J.
Short and Palmer were partners in business, from 1836, to June 28,1841. During the existence of the partnership, the firm borrowed money of one Sally Dana, for which a promissory note was given, and several times renewed, and which remained unpaid, at the time the partnership was dissolved. After the dissolution, and on April 15, 1842, Short, in. the name of E. Short & Co., with the defendant in error as surety, executed a new note to Mrs. Dana, for the principal and interest then due, payable in one year. It was proved that the agent of Mrs. Dana who took this note, knew the partnership was dissolved; and it was further shown that Dodge took the newspaper in which the notice of dissolution was published. This note was once renewed by the same parties, and subsequently, and after the death of Short, was paid off by the surety, Dodge, who brought this action to recover the amount of Palmer, as so much money paid for the use of the firm.
On these facts the counsel for Palmer requested the court to charge the jury, that E. Short, after the dissolution, had no authority to give said notes to a person having knowledge of th'e dissolution, so as to bind the late firm of E. Short & Co.; and the said Dodge, having gone security on the note given after the dissolution, and with notice of it, had no right to recover from Palmer the money paid by him in discharge of the note.
The court refused to give these instructions, but charged the jury that Short, after the dissolution, could not give a note in the name *27, 28 of the firm so as to bind his copartner thereby; but if Short, in the performance of his agency in settling np the business of the firm, thought it necessary for the interests of the firm to renew the note, and in good faith obtained Dodge as security for that purpose, he (Dodge) might recover from Palmer *the amount originally loaned to the firm, with six per cent, interest thereon.
As no claim is made that Palmer came under any direct engagements to Dodge, or that he ever authorized Short to execute this particular note, or afterward recognized or ratified his act, it is evident the case must depend upon the authority retained by Short, as a member of the dissolved partnership, or upon that specially derived from the-agreement of dissolution. We have carefully considered the case in both these aspects, and can see no sufficient reason why the instruction asked for should have been refused. Indeed, it seems quite impossible to justify the refusal, or support the charge as given, consistently with well-established and salutary principles, applicable to the law of partnerships.
During the continuance of the partnership, each member has the undoubted right to bind his associates to the performance of every contract he may make in the name of the firm, within the limits allowed by the articles of association ; and they are equally bound to third persons, having no notice of any special limitation of his power, upon all contracts within the scope and objects of the partnership, although he may have overstepped such limitations. In such cases, the contracting partner acts for himself, and as the authorized agent of his copartners. His authority, it is true, need not necessarily arise from the express terms of the partnership agreement, but the law implies it from the community of interest and joint object for which the association is formed; and, as it is ordinarily necessary to the attainment of its ends, reasonably infers the power of each to act for all, as within the understanding and contemplation of the parties. They are supposed to have reposed this confidence in each other, and however much it may be abused, in behalf of innocent third persons, the conclusive answer is, that the loss must fall upon those who have given the ability to do the wrong.
This capacity continues as long as the joint operations of the *firm endure, and contracts are necessary to accomplish its purposes. Eor the protection of third persons, it may continue longer. As the period of its dissolution, by the agreement of the parties, may only be known to themselves, the law exacts, not only that *29 they should hold themselves out no longer as operating jointly, but that they use reasonable diligence to advise others of the termina tion of their previous connection. As to those who have previously dealt with the firm, the notice must be actual; as to others, public notice in some newspaper circulating in the neighborhood is suffi cient, if even that is required.
In such cases, the other partners are charged for their negligence in omitting to perform a duty which the law requires at their hands, intended to protect third persons against the unauthorized acts of their associates. But where no question of notice intervenes, the dissolution works an absolute and unqualified revocation of all power and authority in either of the partners to bind the others to any new engagement, contract,,or promise. In the language of Judge Story (Story on Part., sec. 322): “None of the partners can create any new contracts or obligations binding upon the partnership ; none of them can buy or sell, or pledge goods on account thereof; none of them can indorse or transfer the partnership securities to third persons, or in any other way make their acts the acts of the partnership. In short, none of them can do any act, or make any disposition of the partnership property or funds, in any manner inconsistent with the primary duty, now incumbent on all of them, of winding up the whole concerns of the partnership..”
As the dissolution finds the engagements of the company, they must remain until liquidated and paid, unless all the partners consent to come under new engagements or otherwise change their character. But while the law thus effectually revokes the implied authority of each partner to incur new obligations for his fellows, it leaves upon each of them the duty, and continues to each the right, of doing whatever is necessary to collect the *debts due to the partnership, and to adjust, settle, and pay its debts. “ For (as stated by the same author) all these acts, if done bona fide, are for the advancement and consummation of the great objects and duties of the partners upon the dissolution, to wind up the whole partnership concern and divide the surplus, if any, among them, after all debts and charges are extinguished.”
This right of each of the partners to participate in the settlement of its concerns, can not be interfered with by his copartners, without subjecting them to the controlling power of a court of equity; but it of be him *30 self, or lie may, if he sees fit, invest them with more extended authority than the law will imply in their behalf.
Appended to the notice of dissolution signed by the partners, and published in this case, is this clause: “The remaining urn settled business of the firm will be adjusted by E. Short, who is hereby authorized to close all business transactions of the late firm.” This notice is good evidence of the agreement of the parties, and conclusive in favor of third persons who have dealt with Short, relying upon it. But no one could or had a right to understand it as authorizing Short to do more than to adjust and settle the unfinished business, and close up the transactions of the firm. This power he had without the agreement; it added nothing to the authority which the law gave, and took nothing from it. 'Without the agreement, Palmer would have had equal authority, and the utmost effect that can be given to the stipulation, would be to consider it as a surrender of the right by him, and as having invested Short alone with the power before possessed by both.
There is not a word in it to indicate an intention to confer upon him the authority to create new obligations. He is, therefore, remitted to his power as a partner, and considered in that light, it is very clear, he possessed no such authority. The elementary books and adjudged cases speak an almost uniform language upon the subject.
*In Bell’s Commentaries (2 vol. 644), it is said: “After dissolution, no valid draft, acceptance, or indorsation can be made by the firm; and it is no authority to do so; if any one partner is, in the notice, empowered to receive and pay the debts of the company. The indorsation, draft, or acceptance must be done by all the partners, or by one specially empowered, so to act for them.” And he confines the power to u acts of administration which are necessary for winding up the concern.” 1
Collyer on Partnership, in section 541,. says: “ Where a bona fide dissolution has taken place, the retiring partners are not to be bound by instruments negotiated in the name of the original firm after such dissolution, even though they are negotiated by a partner authorized to settle the partnership concerns.” To the same effect, see 3 Kent’s Com. (5 ed.) 63; Story on Part., see. 322.
In England, Abel v. Sutton, 3 Esp. 110, is the leading case, and has been uniformly followed ever since.
*31 In that case, a promissory note due to the firm at the time of dissolution, was afterward indorsed in the name of the firm by a partner who had authority to settle and liquidate the partnership effects, of which notice had been given in the Gazette; suit was brought by the indorsee to charge all the members of the firm as indorsers of the note.
For the plaintiff, it was insisted:
1. That if the note existed before the dissolution, a partner having authority to settle and liquidate the partnership accounts, had a right to put the partnership name upon it, and that a bona fide holder might resort to all the partners.
2. That if the indorsing partner raised money by sale of the note, and applied it in payment of the partnership debts, it was money had and received to the use of the partners, and all would be liable.
Lord Kenyon most emphatically denied both of these propositions, and held that a recovery could not be had on the indorsement, *or on the money counts, against any but the indorsing partner. He says: “ To contend that this liability to be bound by the acts of his partner, extends to time subsequent to the dissolution, is, in my mind, a most monstrous proposition. A man, in that case, can never know when he is to be at peace, and retired from all concerns of the partnership.”
In that country, from that day to this, there has been a constant and most decided leaning against giving effect to new contracts, notes, or other instruments made by a partner for the firm after dissolution, as will be seen by the cases of Pindar v. Wilkes, 1 Marshall, 248; same case, 5 Taunt. 612; Kilgour v. Finlyson, 1 H. Black. 155.
One of the earliest American cases is that of Hackley v. Patrick and Hastie, 3 Johns. 536. Patrick and Hastie were partners in trade; they dissolved their partnership, and made publication of their dissolution. The advertisement requested all persons having any unsettled business with the firm, to call on Hastie for adjustment of the same.
Two years afterward, the plaintiffs exhibited an account against the firm, on which Hastie indorsed for the firm an acknowledgment that it was due. Suit was brought on this account against Patrick and Hastie, and the question was, whether the acknowledgment was sufficient to charge the defendant, Patrick? The court said: *32 “It was a clear case, that Hastie could no more bind his copartner by this acknowledgment, than he could do it by giving a promissory note in the name of the firm.”
Martin v. Walton & Co., 1 McCord, 16, is another American case of early date. In that case, the firm of Walton & Co. had been dissolved, and notice given by advertisement that Walton, one of the partners, was authorized to settle the concerns of the partnership. At the time of the dissolution of the firm, it was indebted, by note, to the plaintiff. After the dissolution, the note then in question was given by Walton, in the name of the firm, as a renewal note., and the question was, whether this note was ^binding on the other partners. The court said : “ There is no doubt, that if the note was given after the dissolution of the partnership, and the plaintiff had notice of it, the firm are not bound. An authority to one of a copartnership to settle the affairs, receive and pay the debts, does not warrant him to draw a bill or give a promissory note in the partnership name.”
In Sanford v. Nickles, 4 Johns. 227, the disability of a partner after dissolution to indorse bills given before the dissolution, even if he had authority to settle the partnership affairs, is held to be settled law.
This question again came up at a much later period, and'was elaborately considered by the Supreme Court of New York, in the case of the National Bank v. Norton and others, 1 Hill, 572.
That was an action of assumpsit against the defendants, as makers and indorsers of a promissory note. The note was dated in January, 1840, and purported to have been indorsed by Seaman and Norton as first indorsers, and by Henry J. Seaman as second indorser. Seaman & Norton was the name of a former firm, composed of Henry J. Seaman and the defendant, Norton. Both indorsements were in the handwriting of Seaman. The firm was dissolved in 1837, and notice of the dissolution was then published. The advertisement was in these words, viz:
“ The copartnership heretofore existing between the subscribers, under the firm of Seaman & Norton, is this day dissolved by mutual consent. The business of the firm will be settled by Henry J. Seaman, who is duly authorized to sign the name of the firm for that purpose.”
A short time prior to the dissolution, the National Bank had discounted for the firm of Seaman & Norton, a note drawn by the *33, 34 same makers with the one then in question, and indorsed by the firm. That note was held by the bank when the dissolution took place. It had been renewed from time to time by the same parties, and the note then in question was given, by way of *renewal, for the balance then remaining due on the loan. The question was, whether the partner, Norton, was liable?
The court, in the first place, lay down and enforce the doctrine as settled law, that one partner, after dissolution, can not bind the others even by the renewal of a partnership note. They then proceed to say: “ The note in question, a renewal note, which had been running in bank before the dissolution, was-renewed by Seaman, one of the partners, afterward. It was, of course, void in respect to Norton, his copartner, unless a power of renewal was expressly delegated at the time of the dissolution. The plaintiffs claim that such power was delegated, and base themselves on the clause in the advertisement of dissolution, declaring that the business of the firm was to be settled with Seaman, who was authorized to sign the name of the firm for that purpose. This was no more than a power to liquidate partnership demands, and sanction the liquidation by the firm name. It gave no more power to renew the old note, than to give one payable in chattels.”
The court review and comment upon the above-mentioned cases of Abel v. Sutton, 3 Esp. 110; Martin v. Walton, 1 McCord, 16; and Hackley v. Patrick & Hastie, 3 Johns. 536 — all three of which, they say, were in point. In respect to them they use this language:
“ These were all cases of express authority to settle after dissolution ; yet the first holds, that the power did not extend to indorsing a partnership note even in liquidation of a partnership debt. In the second, it was denied to be a power of renewal; and in the third, a power of adjustment was denied to operate as an authority to sign an account stated. In the case at bar, an express power to use the name is given ; but it is confined to the purposes of adjustment (settlement).. The words did not work an extension of power in any respect beyond the form of doing the business.”
.The same question came before the Supreme Court of Massachasetts *in the case of Parker v. McComber, 18 Pick. 509. There a firm, consisting of three partners, was dissolved; two of them were authorized to collect the debts and settle the business of the partnership. They indorsed a note due to the firm at the *35 time it was dissolved. The question was, whether the other part ner was liable as indorser of the note.
For the plaintiff, it was insisted that the authority given to the two other partners raised the inference, that it was intended to give them power to negotiate the note then in question. The court said in reply: “We can not perceive the correctness of this inference. Were it sound, each partner must be presumed to know of all the negotiable bills and drafts due to the firm and unindorsed at the time of the dissolution. He must be presumed to have intended to give authority to negotiate them in the name of the firm-But if this were so, the general rule of law would be, that an authority to settle the business would be of course an authority to indorse negotiable securities; but the general rule is clearly the other way.”
This question arose also in the State of Maine in the case of Perrin v. Keene, 19 Maine, 357. There one Weston, a partner having authority to dose up and settle the affairs of a partnership, settled an outstanding account and gave three notes of the firm for the debt, which was divided into installments. Keene, who was a member of the dissolved firm, resisted payment. The court said: “ Weston had no right to sign the notes in suit in the name of the firm,, unless he derived it from the authority given to him to settle and adjust the copartnership business. This does not give him any power to make new contracts, or to create new liabilities binding on the firm. No such power can be derived from the agreement that Weston should settle and, dose up the business of the firm. The notes, then, were made and delivered without authority, and are not valid against the firm.”
And the same doctrine is most explicitly declared in Darling v. Marsh, 22 Maine, 184.
*And finally, the Supreme Court of the United States, in Bell v. Morrison, 1 Pet. 351, [35 after a very elaborate examinaton of the subject, thus announce the result: “The light in which we are disposed to consider this question is, that after a dissolution of a partnership, no partner can create a cause of action against the other partners, except by a new authority communicated to him for that purpose. It is wholly immaterial what is the consideration which is to raise such cause of action; whether it be a supposed preexisting debt of the partnership, or any auxiliary consideration *36 ■which might prove beneficial to them. Unless adopted by them, they are not bound by it.”
Further illustrations of the doctrine may be found in Mitchell v. Ostram, 2 Hill, 520; Root v. Wellford, 4 Munf. 215; Fisher v. Tucker, 1 McCord’s Ch. 172; Neal v. Hassen, 3 McCord, 278; Foultz v. Paine, 2 Dessaus. 40; Marvin v. Kirk, 2 Humph. 529.
In opposition to this prevailing current of authority, we are referred to three cases decided by the Supreme Court of Pennsylvania: Davis v. Desauque, 5 Wharton, 531; Houser v. Irvine, 3 Watts & Serg. 347; and Brown v. Clark, 14 Penn. St. 475. In the first of these cases, it seems to have been held, that a partner authorized to close up the affairs of a dissolved partnership, might renew a note drawn by the firm, or even borrow money on the credit of the firm to pay its debts; which,' if but bona fide, and faithfully applied, would create a valid claim against the other members of the firm, although the creditor had knowledge of the dissolution. It may well be doubted whether the court intended, in the two latter cases, to press the doctrine so far, dr to approve of all that is said in that case. Ch. J. Gibson, in Houser v. Irvine, seems to consider what he calls the ruling, principle of that case to have been an affirmance of the authority of the partner to renew the evidences of the firm’s indebtedness; and he admits that, “ by the dissolution of the partnership,’ the power which each had to bind the other is at *an end, except • • • to finish what remains to be done in order to close its concerns.” Even to this extent it would find little or no support in judicial opinion out of that state, although it might not be deemed a very wide departure from principle when the obligations of the firm were not materially changed.
The case called for an application of the doctrine which allows the acts and acknowledgments of one of the partners, after the dissolution, to take a contract of the firm out of the operation of the statute of limitations. This doctrine, originating, as Judge Story says, in an unreasoned decision of Lord Mansfield, in Whitcomb v. Whiting, Doug. 652, in which his lordship “dryly and briefly” said: “ Payment by one is payment for all, the one acting virtually as the agent for the rest; and in the same manner an admission by one is an admission by all, and the law raises the promise to pay when the debt is admitted to be due,” has been very generally repudiated in this country, and so far as I am advised, uniformly by the courts of this state. But the very ground upon which this con *37 troversy has proceeded, affords indubitable evidence of the general acquiescence in the principle which denies the power of one partner to bind the firm to new engagements; those who support the doctrine insisting that the acknowledgment is a mere continuation of the original promise, and those who oppose it, regarding it as a new contract or promise springing out of, and supported by, the original consideration.
We see nothing to relieve this case from the operation of this settled principle. If we admit the power to renew the obligations of the firm without increasing or materially changing its liabilities, or the right of the unpaid creditor of the firm to resort to his original obligation, it does not help the defendant. The note to which he was a party was, in substance and legal effect, widely variant from that for which it was taken. It had different parties, a larger amount upon interest, and a distant day for payment. Short could effect none of these changes for the firm ^without a new authority. It was his duty to close up and settle the partnership liabilities, and not to prolong them by new credits; to deal with the existing creditors of the firm, and not to make others; to discharge its existing indebtedness, and not to add to it.
But the creditor of the firm has been fully paid; and how has Dodge become its creditor now? He surely could not make himself such without the assent or request of all its members. He does not claim that Palmer ever personally requessed him to assume or pay any of its liabilities; and Short had no power to create the relation of debtor and creditor between him and Palmer. He became the surety upon a note which bound Short alone, at the request of Short, and is therefore the surety of Short, and must look to him alone for indemnity.
He stands in no better condition, certainly, than the plaintiff did in the case of Bowman v. Blodget, 2 Met. 308, who, in a suit against both the partners of a dissolved partnership, for a partnership debt, became the bail of one of them, and was obliged to pay the debt, and in which the court held that he could recover no part of the amount from the other partner.
We should find no difficulty in holding that the proof of the dissolution was sufficient to charge Dodge, in the absence of any proof, on his part, to show that he had dealings with the firm before its dissolution. But this question is wholly immaterial, as the court, in effect, took it from the jury, and charged that Dodge would be *38, 39 entitled to recover, notwithstanding he had notice, if Short, in good faith, thought it necessary to renew the note, and procured him to become security on it. In this we think they erred; and the judgment, so far as the amount of this note entered into it, must be reversed.